(78 South. 85)

HESS et al. v. HODGES. (7 Div. 925.)

(Supreme Court of Alabama. Feb. 7, 1918.)

1. APPEAL AND ERROR ☞1009(1) — CONCLUSIONS OF TRIAL COURT—REVIEW.

Witnesses having been examined orally before the trial judge, his conclusion of fact will not be disturbed unless plainly palpably erroneous.

2. ACKNOWLEDGMENT ☞7 — CORRECTION OF DEED—REACKNOWLEDGMENT.

Acknowledgment and delivery of a deed having been perfected, correction of the description therein by the grantor, though with the grantee's consent, had no effect or operation; the instrument not having been again acknowledged or attested.

3. VENDOR AND PURCHASER ☞220 — BONA FIDE PURCHASER—WANT OF TITLE.

Where grantor did not have legal title because description in recorded deed to him was defective, his grantee could not be a bona fide purchaser without notice.

4. APPEAL AND ERROR ☞1078(1) — ASSIGNMENT OF ERROR—WAIVER.

Assignments of error not insisted upon in brief will be held to have been waived.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, St. Clair County; J. E. Blackwood, Judge.

Bill in equity by Libbie P. Hodges against J. A. Hess and others. Decree for complainant, and defendants appeal. Affirmed.

Embry & Embry, of Ashville, for appellants. John W. Inzer and J. P. Montgomery, both of Ashville, for appellee.

McCLELLAN, J. The appellee, Mrs. Hodges, filed this bill against J. A. Hess and his wife, L. M. Mize and his wife, W. O. Courson, and John Glenn. Mize and wife suffered decrees pro confesso to enter, and Glenn, being only a tenant of Courson, disclaimed. They were without any particular interest in the meritorious issues involved. The contest proceeded in the court below with Hess and Courson as the only real litigants on that side of the line. The prayer for relief sought the correction of the description in the deed of the Mizes to complainant, dated December 21, 1910, and also the correction of the description in the mortgage given by Hess and wife on the 11th of November, 1913, to the complainant; and also the foreclosure of the mortgage on the land thus correctly described. There was an alternative prayer for relief, along with the general prayer; but the determination of the appeal does not require specific consideration thereof.

[1] The witnesses were examined orally before the judge of the circuit; and it may be stated at this point that his conclusions of fact, after personally observing and hearing the witnesses, will not be disturbed unless plainly palpably erroneous. Fitzpatrick v. Stringer, 200 Ala. 574, 76 South. 932, among others.

[2] On December 21, 1910, the complainant (appellee) purchased the two-acre lot in question from Mize and wife. She paid the purchase money and went into possession of the lot intended by the parties to be conveyed. There was a mistake in the description of the lot in the Mize deed. This deed was filed for record and faithfully recorded on January 10, 1911. The complainant built a dwelling house on the lot and otherwise improved it, expending therefor about $1,700. On November 11, 1913, the improved premises were sold by the complainant to J. A. Hess for a consideration of $1,800. A deed was executed and delivered to Hess, wherein the same mistake in the description of the lot was made as occurred in the Mize deed to the complainant. Hess gave a large number of installment notes, and executed a mortgage on the lot to complainant to secure the purchase money. A like mistake occurred in the description of the premises in the mortgage. Hess went into possession of the lot under his purchase, paying some cash. About two years after the delivery of the deed to Hess the mistake in the description in the Mize deed was discovered; and the Mizes, with the consent of the appellee or her agent, directed Probate Judge Herring, by letter, to enter on the record of this deed a specific correction of the misdescription. This was done by Judge Herring. The original deed from the Mizes to the complainant was also sought to be corrected; but whether this was done with appellee's consent or the consent of her agent was disputed in the evidence. The acknowledgment, delivery, and registration of the deed from Mize to complainant, having been perfected long before the interlineation in the original deed was made, the amendment of that instrument, even though made with the grantee's consent, had no effect or operation; the instrument not having been again acknowledged or attested. Sharpe v. Orme, 61 Ala. 263, 269; Webb v. Mullins, 78 Ala. 111, 114. For the same reason the deed from appellee to J. A. Hess was ineffectual to convey title to the lot in question to Hess; and the mortgage from Hess to complainant was likewise defective. The parties might, of course, have corrected these misdescriptions through the efficient execution and delivery of other instruments or the re-execution, in due form, of the amended instruments. Lavender v. Lee, 14 Ala. 688, 693. An equity to reform the instruments to make them describe the land intended to be conveyed was available (Gen. Acts 1911, pp. 199, 200; Goulding Fertz. Co. v. Blanchard, 178 Ala. 298, 303–310, 59 South. 485); but these respective instruments did not convey the legal title to the lot in controversy to Mize's grantee, to Hess, or to appellee as mortgagee.

[3] Notwithstanding the warranty deed from Hess to Courson, of date February 18, 1916, contained a correct description of the lot in question, that instrument did not transmit to Courson the legal title to the lot; Hess, himself, not having the legal title to convey. One cannot be a bona fide purchaser where his grantor did not have the legal title to convey. State v. Conner, 69 Ala. 212, 217; Craft v. Russell, 67 Ala. 9; Overall v. Taylor, 99 Ala. 12, 18, 11 South. 738. Hence Courson, as the purchaser from Hess on February 18, 1916, could not claim the protection of a bona fide purchaser for value without notice. Courson and Hess filed separate answers to the bill. No cross-bill was interposed by either of them. The only debatable question presented by the bill arises out of the following averments in Courson's answer:

"Respondent avers that he is informed and believes and therefore states and charges that W. P. Hodges, who was then and is now the husband of the complainant, Libbie P. Hodges, made each and every one of the transactions alleged and set out in his said bill of complaint, between his said wife, Lewis M. Mize, and Emma Mize and Jas. A. Hess and Edna Hess as the agent or husband of complainant, and respondent upon information and belief further states and charges that before the said Jas. A. Hess, and wife, Edna Hess, conveyed said real estate to respondent by their deed, of date February 18, 1916, the said W. P. Hodges as such husband and agent of his said wife, Libbie P. Hodges, agreed with said Hess and authorized said Hess to make said sale and as such agent,

being informed at the time this respondent was paying for the real estate so conveyed to him by said J. A. Hess and wife by a conveyance to said Hess and wife of other valuable real estate located in the counties of St. Clair and Jefferson in the state of Alabama, and that it was agreed and understood by said Hodges as such agent and husband of complainant that said Hess was to execute and deliver to said W. P. Hodges for complainant and payable to her as such agent and husband of his said wife, Libbie P. Hodges, a mortgage upon the real estate he so received from this respondent in exchange for the real estate herein described, payable in annual payments of $300 each until paid, and that in keeping with said agreement the said Jas. A. Hess did consummate his said sale to this respondent of the lands described in paragraph 1 of this bill of complaint. Respondent further avers and charges upon information and belief which he believes to be true that after he had conveyed to said Hess the real estate so given in exchange by him for said real estate described in paragraph 1 of this bill, the said W. P. Hodges as such agent and husband of his said wife, Libbie P. Hodges, proceeded to have said agreement carried out by taking said mortgage so to be executed by said Hess and wife upon the real estate so received in exchange by said Hess from this respondent to the extent and having an agreement with said Hess as to the time and place and before a designated officer, to wit, H. W. White, a justice of the peace, when and where said mortgage should be executed. Respondent upon such information and belief avers and charges that after he had purchased and paid for said real estate the said Hess went to the said W. P. Hodges as such agent and husband of complainant and offered and now stands ready and willing to carry out his part of said agreement, but that for some reason unknown to respondent the said Hodges refused to carry out his said agreement with said Hess and that without fault on the part of the said Hess; hence this respondent avers and charges that said mortgage attached to said bill should not as against him be reformed and foreclosed."

Substantially the same theory of estoppel was asserted in the answer of J. A. Hess to the original bill. The doctrine the appellants would invoke is thus reproduced in Goetter v. Norman, 107 Ala. 585, 596, 19 South. 56, 58:

" 'It is a general law that if a man, either by words or conduct, has intimated that he assents to an act which has been done, and that he will not offer opposition to it, although it could not have been lawfully done without his consent, and he thereby induces another to do that from which they otherwise might have abstained, he cannot question the legality of the act he had so sanctioned, to the prejudice of those who have so given faith to his words, or to the fair inference to be drawn from his conduct.' And again, 'If a party has an interest to prevent an act being done, and acquiesces in it, so as to induce a reasonable belief that he consents to it, and the position of others is altered by their giving credit to his sincerity, he has no more right to challenge the act to their prejudice, than he would have, had it been by his previous license.' "

In addition to other considerations that would probably preclude a conclusion at variance with that necessarily attained by the court below on the matter of estoppel sought to be asserted, it will suffice to say that the evidence was in irreconcilable conflict on the issues material to the successful interposition of the estoppel sought to be pleaded.

The trial court saw and observed the witnesses who gave testimony bearing on the issue. Consistent with the decree wherein the complainant was awarded the full relief prayed, the conclusion must have been attained that the essential bases of fact upon which the asserted estoppel rested were not established by the respondents who sought to avail of the estoppel. The claim is that the husband, as the authorized agent of the complainant, unqualifiedly authorized Hess to make the sale of the lot to Courson. The conclusion that the husband was not so empowered by the complainant (mortgagee) as principal is justified by the record. The evidence did not establish such an authorization by the complainant of her husband as her agent. Furthermore, the court was justified in concluding that the husband did not unqualifiedly authorize or attempt to authorize Hess to sell the lot without reference to, free from the charge of, the mortgage held by complainant. Indeed, a fair construction of what the husband said with reference to the sale of the lot would be to refer it to an effort on his part to permit the mortgagor to improve his financial status by or through the substitution of a security of a value equal to that of the premises the parties intended to describe in the mortgage. It would be wholly unreasonable to suppose that the complainant or her agent would have consented, without any other consideration, to the absolute relinquishment of the mortgage as an incumbrance, legal or equitable, upon the lot in question. According to the terms of the mortgage, the entire debt had matured when the bill was filed; and the decree is not affected with error on that account, since it gave effect to these provisions of the mortgage.

[4] There is in the brief no insistence upon the assignment of error bringing into question the propriety of the action of the court in overruling the demurrers to the original bill. The assignment must be held to have been waived under the familiar practice in this court. The decree is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.